# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# Roanoke Division

| | |
|---|---|
| **JAMES LEE CECIL, JR., #1529889,** ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:17cv00352 |
| ) | **MEMORANDUM OPINION** |
| **MICHAEL FLEMING,** ) | |
|     Defendant. ) | |

The plaintiff, James Lee Cecil, Jr., ("Cecil"), an inmate formerly incarcerated at the Southwest Virginia Regional Jail facility in Haysi, ("Jail"),[1] and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant, Michael Fleming, a Jail correctional officer, assaulted him and verbally threatened further injury to him on March 29, 2017, in violation of his Eighth Amendment rights. Cecil seeks monetary damages. This case is before the court on Fleming's motion for summary judgment claiming Cecil's claims should be dismissed for failure to exhaust his administrative remedies, (Docket Item No. 45) ("Motion"). Based on the evidence before the court, I will grant the Motion and enter summary judgment in the defendant's favor.

---

[1] By letter received April 27, 2018, Cecil informed the court that he had been released from custody. (Docket Item No. 85.)

## I. Facts[2]

In his Complaint,[3] Cecil claims that Fleming assaulted him on March 29, 2017, by slamming his right hand and arm into the tray slot and twisting his hand until his wrist made a loud popping noise. He also claims that Fleming threatened to break or cut off his fingers. Cecil claims this injury has caused him to have limited coordination of his wrist and constant pain and scarring. Cecil claims that he was not being disruptive and did not pose a security threat to Fleming.

Cecil also filed a Verified Statement, stating that his cause of action arose at the Jail's Haysi facility, and, at the time of the filing of his Complaint, he was being housed at the Jail's Duffield facility. (Docket Item No. 2.) Therefore, Cecil stated that he did not believe that he had administrative remedies available to him at that time. Cecil also has filed a copy of an Inmate Grievance Form, dated April 27, 2017. (Docket Item No. 27 at 2.) On this Form, Cecil stated that his grievance was "[o]n the morning of 3-29-17 at approx. 6:15 a.m. Officer M. Fleming physically assaulted me." (Docket Item No. 27 at 2.) Cecil wrote that he wanted "to allege or press a charge of a criminal matter[] … simple assault against him by alleging this to the Magistrate or Commonwealth Attorney." (Docket Item No. 27 at 2.) Under "Staff's response" it is written: "This has been investigated and unfounded." (Docket Item No. 27 at 2.) The response is dated May 3, 2017.

---

[2] On a motion for summary judgment, the court may review a number of materials to determine whether a genuine dispute of any material fact exists, including sworn testimony, affidavits, sworn pleadings, discovery responses and other materials contained in the record. *See* FED. R. CIV. P. 56(C).

[3] Cecil's Complaint, (Docket Item No. 1), was amended by Order entered on October 12, 2017. (Docket Item No. 30.) This Amended Complaint, (Docket Item No. 20-1), will be considered, along with the original Complaint, in deciding the Motion. Collectively, they will be referred to as the Complaint.

(Docket Item No. 27 at 2.) This Form does not show that Cecil appealed the decision on this Grievance.

Cecil also has filed a second Inmate Grievance Form, dated April 27, 2017. (Docket Item No. 27 at 3.) On this Form, Cecil wrote: "On 3-29-17 at approx. 6:15 a.m. Officer M. Fleming threatened me by raising his knee up and telling me if I didn't move my fingers then he would cut them off or break them all to fucking hell. Referring to my fingers in the tray slot." (Docket Item No. 27 at 3.) Cecil also wrote that he would like to bring a criminal charge of communicating a threat against Fleming and asked to be taken before a Magistrate to do so. (Docket Item No. 27 at 3.) The response was: "This has been investigated and unfounded." (Docket Item No. 27 at 3.) The response was dated May 3, 2017. This Form does not show that Cecil appealed the decision on this Grievance.

In support of his Motion, the defendant has supplied a sworn affidavit from Jeannie Patrick, the Administrative Lieutenant at the Jail. (Docket Item No. 46-1.) Patrick stated that, as Administrative Lieutenant, she was familiar with the Jail's procedures and policies and inmate records, including the Jail's Inmate Grievance Procedure. Patrick stated that the Jail's Inmate Grievance Procedure was outlined in the Inmate Handbook, which was attached as Exhibit A to her affidavit. Patrick stated that all Jail inmates, including Cecil, were oriented as to this grievance procedure and how to access the Inmate Handbook when they were received at a Jail facility. A copy of Cecil's orientation form was attached as Exhibit B to her affidavit.

Patrick stated that the Jail's Inmate Grievance Procedure required an inmate to first make a good faith attempt to resolve his issue through informal channels. If

this does not resolve the issue, the inmate must file a grievance within seven days of the alleged occurrence, she said. A response to an inmate grievance will be given within nine days, Patrick said. If an inmate is dissatisfied by a response, she said, the inmate must appeal in writing within seven days of receiving the response.

A review of the Inmate Handbook, attached as Exhibit A to Patrick's affidavit, shows that it contains the following concerning the Jail's Inmate Grievance Procedure:

> … There are four steps in filing a grievance:
> 1. You must make a good faith attempt to resolve the issue through informal channels by use of a Request Form or Medical Request Form which are located on the Kiosk, where available. The time limit on response to these request forms is the same as any other request form.
> 2. You may file a grievance upon dissatisfaction in the answer to the request form within 7 days of the occurrence. A grievance may be submitted on the Kiosk where available. If the Kiosk is not accessible, the inmate may be given a grievance form. All prerequisites of the grievance procedure must be exhausted prior to filing the grievance. The inmate shall place the grievance in the designated area for outgoing mail. If the issue is an emergency, it may be forwarded to the Shift Commander. If the Shift Commander finds the grievance to not be an emergency, the he/she will indicate said finding and forward[] [it] to the Grievance Officer.
> 3. The validity of the grievance will be reviewed to determine if it meets the definition of a grievance and if proper informal resolution attempts have been made. If it is not valid, it will be returned to you within nine (9) days of receipt stating the reason it is not valid. If your grievance is valid, there shall be a written finding returned to you for every submitted grievance form within nine (9) days of receipt.

4. When you receive a response to a grievance and [are] not satisfied, you may appeal the result, in writing, within 7 days of receipt of the response, to the Chief of Security, who will process the appeal.

(Docket Item No. 46-2 at 27-28.) The Inmate Handbook does not list a time period for a response to request forms or medical request forms. As stated above, Cecil signed an Inmate Orientation form, dated February 2, 2017, stating that he was advised as to the availability of the Inmate Handbook. (Docket Item No. 46-3 at 1.)

Patrick stated that a review of Cecil's inmate grievance file, pertinent copies of which were attached to her affidavit as Exhibit C, showed that Cecil did not properly exhaust his administrative remedies as to Fleming's alleged March 29, 2017, assault and threats, in that Cecil did not file any grievance related to these events until April 27, 2017. Patrick stated that Cecil received a response to his grievances on May 3, 2017, but did not appeal the responses. Patrick also stated that, after being transferred to the Jail's Duffield facility, Cecil filed a grievance electronically through the prisoner kiosk on August 11, 2017, stating that he had been assaulted by Fleming at Haysi on March 29, 2017. She said that a response was generated on August 28, 2017, asking Cecil whether the Haysi facility was aware of the allegations. She said that Cecil responded that Haysi was aware of the claim and that he was in the process of exhausting his administrative remedies.

A review of Cecil's inmate grievance file shows that the two grievances he provided to the court, (Docket Item No. 27), were filed with the Jail. Again, these forms do not show that Cecil filed any appeal of the responses he received. (Docket Item No. 46-4 at 2-3.)

Patrick stated that the Jail's medical records, pertinent copies of which were attached to her affidavit at Exhibit D, showed that Cecil was seen by Jail medical staff numerous times between March 29, 2017, and July 28, 2017, and that he never voiced any complaint of an injury to his arm or wrist. Patrick stated that the first complaint of wrist pain in Cecil's medical records appeared on August 12, 2017.

In response to Fleming's Motion, Cecil filed a declaration made under penalty of perjury. (Docket Item No. 56-1.) Cecil stated that he mailed a request form to Jeannie Patrick on April 19, 2017, telling her about the incident. Cecil said he received the request form from Captain Baker on May 4, 2017, on which Baker had written, "Mr. Cecil this has been investigated and unfounded." (Docket Item No. 56-1 at 3.) A review of the copy of this form provided by Cecil shows that the request form does not state a time limit for staff response to such a request. (Docket Item No. 56-4 at 6.) From the dates contained on the form, it appears that Baker took 15 days to respond to Cecil's request. (Docket Item No. 56-4 at 6.) Cecil also stated that he grieved the matters to Lt. McCoy on April 27, 2017, and she responded on May 3, 2017.

Cecil also provided a sworn affidavit in response to Fleming's Motion. (Docket Item No. 56-3.) In this affidavit, Cecil stated that he was familiar with the Jail's Inmate Grievance Procedure and that the procedure was outlined in the Inmate Handbook, the pertinent part of which he attached as Exhibit A to his affidavit. (Docket Item No. 56-4 at 1-2.) He said that he was oriented to the grievance procedure when he was received at the Jail and that he signed a form acknowledging this, which he attached as Exhibit B. (Docket Item No. 56-4 at 1-2.) Cecil stated that he did not have access to the Inmate Grievance Procedure

because he was held in administrative segregation at the Haysi facility from February 17, 2017, until his transfer to the Duffield facility on June 15, 2017. Cecil stated that he grieved the matters raised in his Complaint once he arrived at the Duffield facility. Cecil attached a copy of these documents to his affidavit as Exhibit D. (Docket Item No. 56-4 at 5.) Included in these documents was a Request For Information form, dated April 19, 2017, to the Administrative Lieutenant, asking to be taken in front of a Magistrate to press charges against Fleming regarding his alleged March 29, 2017, assault and threats against Cecil. (Docket Item No. 56-4 at 6-9.) Captain Doug Baker responded on May 4, 2017, writing: "Mr. Ce[c]il, This has been investigated and unfound thanks." (Docket Item No. 56-4 at 6.)

Despite claiming that he had no access to the Inmate Grievance Procedure while housed at Haysi, Cecil attached the two Inmate Grievance Forms he filed on April 27, 2017, as Exhibits E to his affidavit. (Docket Item No. 56-4 at 10-11.) Cecil claims that he exhausted all administrative remedies by filing the Request For Information form on April 19, 2017, because it was responded to by Capt. Baker, the Chief of Security. Cecil claims that, because Baker would have been the person to ultimately decide any appeal of any grievance he filed, his Request For Information directed to Patrick, but responded to by Baker, completely exhausted all available administrative remedies. Cecil also claims that it was impossible for him to properly exhaust administrative remedies under the Jail's Inmate Grievance Procedure. In particular, Cecil stated that the procedure requires an inmate to first file an informal request and receive a response before filing a grievance. Under the procedure, Cecil claims, Jail officials have nine days to respond to the informal request. The procedure, however, requires the inmate to file his grievance within seven days of the occurrence.

*II. Analysis*

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.,* 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

The Prison Litigation Reform Act of 1995, ("PLRA"), requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. *See* 42 U.S.C.A. § 1997e(a) (West 2012). It provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). Exhaustion is mandatory under § 1997e(a), and courts have no discretion to waive the requirement. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[F]ailure to exhaust is an affirmative defense under the PLRA" and, therefore, must be both pled and proven by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007). A prisoner must exhaust administrative remedies even where the relief sought, such as monetary damages, cannot be granted by the administrative process. *See Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S. at 734). The Supreme Court has instructed that the PLRA "requires proper exhaustion." *Woodford*, 548 U.S. at 93. Proper exhaustion of administrative remedies for PLRA purposes means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. *See Woodford*, 548 U.S. at 90. Therefore, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his action to court. *See Woodford*, 548 U.S. at 90.

Thus, before Cecil may proceed with his claims in this court, he must first have exhausted the administrative remedies available to him through the Jail's Inmate Grievance Procedure. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from

availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process …, the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Based on the evidence before the court, I find that there is no genuine dispute of material fact, and that, based on these undisputed facts, Cecil did not properly exhaust his administrative remedies before filing suit. The undisputed facts before the court show that, to fully exhaust all administrative remedies available under the Jail's Inmate Grievance Procedure, a Jail inmate must appeal any unfavorable decision on a grievance within seven days of receipt of the decision. Cecil has conceded that he did not file any appeal of the unfavorable decisions he received on his two grievances related to his claims in this case. Nonetheless, Cecil argues that, because Capt. Baker, the Jail's Chief of Security, responded to his informal request concerning his claims, and because the Chief of Security was the person to whom inmates were to appeal unfavorable grievance decisions, he had fully exhausted his administrative remedies. I am not persuaded by this argument. As stated above, the Supreme Court has held that a prisoner must properly exhaust all administrative remedies even where the relief sought cannot be granted by the administrative process. *See Woodford*, 548 U.S. at 85, 93. Also, the court may not excuse a prisoner from the requirement that he utilize all available administrative remedies before filing suit. *See Woodford*, 548 U.S. at 85. Therefore, it is not persuasive for Cecil to argue that he should be excused from fully exhausting his administrative remedies because an appeal to a person who had previously considered his claim was futile.

Cecil also argues that he was prevented from properly exhausting his administrative remedies because he did not receive Capt. Baker's response to his informal request in time to file his grievance in a timely manner. The undisputed facts before the court do show that Capt. Baker did not respond to Cecil's informal request until 15 days from the date on which Cecil filed it. Therefore, even if Cecil had filed his informal request on the date of the alleged incident, he would not have received the response in time to have filed his grievance within seven days of the incident as required. I am not persuaded, however, that these facts show that the Jail's Inmate Grievance Procedure was not available to Cecil. First, the facts before the court show that Cecil did not file his informal request until April 19, 2017 – 21 days after the alleged March 29, 2017, incident. Thus, the deadline for filing a grievance had expired two weeks before Cecil filed his informal request. Second, Cecil's grievances, which the undisputed facts show were filed on April 27, 2017, were not rejected as being untimely filed. Instead, Cecil's grievances were rejected on the merits as unfounded, and Cecil did not appeal the these decisions.

Based on the above, I will enter summary judgment in the defendant's favor.

ENTERED: August 13, 2018.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE